

**FILED**

Mar 31 2015, 10:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

David W. Stone, IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Wenzel Williams,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

March 31, 2015

Court of Appeals Cause No.
48A05-1407-CR-321

Appeal from the Madison Circuit Court

Honorable David A. Happe, Judge

Trial Case No. 48C04-1402-FB-192

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Wenzel Williams was convicted of two counts of dealing in cocaine, both Class B felonies. He raises four issues on appeal: (1) whether the trial court abused its discretion by denying Williams's motion for continuance on the morning of his jury trial; (2) whether the trial court abused its discretion by limiting Williams's cross-examination of the State's

confidential informant; (3) whether the trial court abused its discretion by allowing a police officer to testify that he witnessed Williams participate in a drug transaction; and (4) whether the State committed prosecutorial misconduct during closing argument. Concluding none of Williams's issues require reversal, we affirm.

## Facts and Procedural History

[2] Gayland Swaim began working with the Madison County Drug Task Force as a confidential informant in the spring of 2013. In April 2013, Swaim told law enforcement that he believed he could purchase crack cocaine from a person nicknamed "Bear," who was later identified as Williams, and the officers proceeded to carry out two controlled buys with Williams.

[3] On April 11, 2013, Swaim called Williams to finalize plans for a drug transaction. After searching Swaim and finding no drugs or money, Detective Keith Gaskill, acting as an undercover officer, provided Swaim with money and drove him to meet Williams. Swaim exited the vehicle and conducted a hand-to-hand exchange with Williams approximately ten yards away from Detective Gaskill. Williams and Swaim then entered Detective Gaskill's vehicle together, and Detective Gaskill drove Williams to a nearby residence. After they dropped off Williams, Swaim provided Detective Gaskill with crack cocaine purchased from Williams.

[4] On April 23, 2013, a second controlled buy was arranged between Swaim and Williams. Detective Gaskill searched Swaim, provided him with buy money, and drove him to meet Williams at the residence where they had dropped off Williams after the previous controlled buy. Swaim went inside the residence for approximately five minutes and returned to the vehicle along with Williams. Detective Gaskill drove to a local barbershop, where Williams left briefly before returning to the vehicle and handing his cell phone to Swaim as collateral in exchange for the buy money. After getting the money from Swaim, Williams again left the vehicle and returned minutes later with a package which he gave to Swaim. The package Williams gave Swaim contained cocaine.

[5] On February 5, 2014, the State charged Williams with two counts of dealing in cocaine, both Class B felonies. On February 25, 2014, Williams's original public defender withdrew, and the trial court appointed a new public defender, Evan Broderick, to represent Williams. On March 12, 2014, the trial court granted Williams a continuance and set a trial date for May 20, 2014. On May 16, 2014, a hearing was held and the trial was continued due to court congestion. The trial date was rescheduled for June 11, 2014, after the trial court granted the State's request to expedite the trial to a first-choice setting on that date.

[6] Williams's jury trial was set to begin on June 11, 2014, and his defense attorney made an oral motion for a continuance that morning. Defense counsel argued a continuance was needed for two reasons: (1) the State gave Williams notice of an additional witness the day before trial and (2) he wished to depose Swaim

and felt he had not had adequate time to prepare for trial. The trial court excluded the State's late witness but denied Williams's motion for continuance, and the trial proceeded as scheduled. The jury found Williams guilty of both counts, and he was sentenced to sixteen years on each count, to be served concurrently, with five years suspended to probation. This appeal followed.

# Discussion and Decision

## I. Motion for Continuance

[7] First, Williams argues the trial court erred by denying his motion for continuance on the morning of his jury trial. If a defendant's motion for continuance is based on the absence of material evidence, absence of a material witness, or illness of the defendant, and if certain statutory criteria are met, then the defendant is entitled to a continuance as a matter of right. *See* Ind. Code § 35-36-7-1; *Elmore v. State*, 657 N.E.2d 1216, 1218 (Ind. 1995). Here, Williams's motion for continuance did not meet the requirements of Indiana Code section 35-36-7-1. Therefore, the trial court's decision to deny his motion for continuance is reviewed for an abuse of discretion, and we give great deference to the trial court's ruling. *Elmore*, 657 N.E.2d at 1218. An abuse of discretion may be found where the moving party shows there was good cause for the motion and that he was prejudiced by the denial. *Stafford v. State*, 890 N.E.2d 744, 750 (Ind. Ct. App. 2008). Continuances to allow time for additional preparation are generally disfavored and require a specific showing of how additional time would aid counsel. *Robinson v. State*, 724 N.E.2d 628, 634 (Ind.

Ct. App. 2000), *trans. denied*. Furthermore, "[a] continuance requested for the first time on the morning of trial is not favored." *Lewis v. State*, 512 N.E.2d 1092, 1094 (Ind. 1987).

[8] As an initial matter, we note Williams obtained partial relief when the trial court excluded the State's late witness. Therefore, only Williams's asserted interest in further preparation for cross-examining Swaim could support his motion for continuance. Williams argued that he needed to depose Swaim in order to uncover evidence necessary to attack Swaim's credibility; specifically, Williams wished to discover any "deals" that Swaim had made with the State in exchange for acting as a confidential informant. Transcript at 12.

[9] Swaim's identity, along with his criminal history, was disclosed to Williams on May 19, 2014. From that date until the trial date on June 11, Williams neither requested a continuance nor attempted to depose Swaim. Williams focuses on Swaim's recent theft conviction, a number of continuances he received in that case while acting as an informant for the Madison County Drug Task Force, and what he believed to be a lenient plea agreement. However, Williams was able to admit into evidence Swaim's purportedly favorable plea agreement. Additionally, he was permitted to impeach Swaim with a multitude of past forgery convictions. And as the trial court pointed out, Williams could have attempted to schedule a deposition with Swaim prior to the day of trial but did not. Therefore, we cannot say that Williams has met his burden of establishing he was prejudiced or that the trial court abused its discretion by denying his motion for continuance.

# II.   Swaim's Criminal History & Cross-examination

[10]   Second, Williams contends the trial court abused its discretion by prohibiting him from impeaching Swaim with the entirety of Swaim's criminal record.  A trial court's ruling to admit or exclude impeachment evidence is reviewed for an abuse of discretion.  *Scalissi v. State*, 759 N.E.2d 618, 624 (Ind. 2001).  An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances.  *Hale v. State*, 976 N.E.2d 119, 123 (Ind. Ct. App. 2012).

[11]   Indiana Evidence Rule 609 governs the use of past convictions for impeachment and says that evidence that a witness has been convicted of "(1) murder, treason, rape, robbery, kidnapping, burglary, arson, or criminal confinement; or (2) a crime involving dishonesty or false statement, including perjury" may be used for the purpose of attacking the witness's credibility.  Ind. Evidence Rule 609(a).  The rule also states that

> if more than ten (10) years have passed since the witness's conviction or release from confinement . . . [it] is admissible only if:  (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice . . . .

Evid. R. 609(b).

[12]   Swaim's criminal history includes a laundry list of convictions:  theft (2012); forgery (2000); forgery (1999); child molesting (1991); possession of marijuana (1991); battery; (1990); dealing in marijuana (1985); home invasion (1984); dealing in marijuana (1984); and robbery (1987).  At trial, the jury was made

aware that Swaim had been found guilty of sixteen counts of forgery and that he had recently pled guilty to theft as a Class D felony,[1] but the trial court did not allow Williams to exploit Swaim's remaining convictions at trial.

[13] To the extent Williams wished to use Swaim's past convictions to show his dishonesty, the trial court did not abuse its discretion in concluding that the excluded convictions—all of which were more than ten years old—were inadmissible. Even if some of those convictions fell under Indiana Evidence Rule 609(a), their probative value did not substantially outweigh their prejudicial effect where Williams was able to impeach Swaim with numerous other convictions.

[14] Williams also argues that in addition to using the convictions for Rule 609 purposes, Swaim's entire criminal history was necessary to show bias because of deals he was allegedly receiving from the State in exchange for his service as a confidential informant. More specifically, Williams argues that Swaim received a very lenient plea agreement for his recent theft conviction and that Swaim's significant criminal history would highlight the favorableness of his plea. Williams relies on our supreme court's decision in *Smith v. State*, 721 N.E.2d 213, 219-20 (Ind. 1999), which held a trial court abused its discretion by

---

[1] In Indiana, theft is considered a "crime involving dishonesty" under Indiana Rule 609(a). *See Rowe v. State*, 704 N.E.2d 1104, 1108 (Ind. Ct. App. 1999), *trans. denied*.

prohibiting the defendant from questioning a witness about his pending charges and a possible deal that he had made in exchange for his testimony.

[15] There is one major difference between this case and the circumstances in *Smith*: that is, Williams was actually *allowed* to admit evidence of Swaim's most recent plea agreement, while the defendant in *Smith* could make no reference to a deal whatsoever. Williams was free to argue that Swaim received favorable treatment and that he had a self-serving interest in working with the State and testifying against Williams. After an offer of proof and argument on the issue, the trial court concluded that diving into the intricacies of the plea negotiation process, sentencing considerations, and the significance of Swaim's full criminal history would create a risk of confusing the jury without providing much added benefit to Williams. Considering the ways Williams was able to impeach Swaim, we find no abuse of discretion in the trial court's limiting of cross-examination.

## III.  Testimony on Ultimate Issue

[16] Third, Williams argues that a State's witness, Detective Gaskill, was improperly allowed to give an opinion concerning Williams's guilt. Indiana Evidence Rule 704(b) provides that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case . . . ."

[17] During the State's direct examination of Detective Gaskill, the following testimony was given:

[State]: On this occasion, this first occasion, any doubt in your mind that what you saw was a drug transaction?

[Williams's objection overruled.]

[State]: You gave the confidential informant money when he got out of the vehicle. Any doubt in your mind that a drug transaction took place in front of you?

[Detective Gaskill]: On buy number one (1) on April 11th?

[State]: Yes, sir.

[Detective Gaskill]: No. Having conducted over two hundred and fifty (250) of these types of investigations, there's zero doubt in my mind that that was a transaction for cocaine.

Tr. at 316. Williams argues that Detective Gaskill's testimony is effectively an opinion that Williams was guilty of the crime of dealing in cocaine, transgressing Indiana Evidence Rule 704(b). We disagree.

[18] "Rule 704(b) does not prohibit presentation of evidence that leads to an inference, even if no witness could state [an] opinion with respect to that inference." *Steinberg v. State*, 941 N.E.2d 515, 526 (Ind. Ct. App. 2011) (alteration in original) (quoting 13 Robert L. Miller, Jr., *Indiana Practice* § 704.201 at 589 (3d ed. 2007)), *trans. denied*. In *Robles v. State*, this court considered an appeal of a conviction for operating a vehicle while intoxicated in which a law enforcement officer testified that the defendant was "intoxicated." 705 N.E.2d 183, 186 (Ind. Ct. App. 1998). We held that there was no violation of Rule 704(b) because the officers were testifying as to their personal observations, not whether the defendant was guilty or innocent of the charged offense. *Id.* We find *Robles* analogous to this case. Detective Gaskill testified to his belief that he personally observed a drug transaction occur in front of his

eyes. While this certainly leads to an *inference* of guilt, it does not run afoul of Rule 704(b).

# IV. Prosecutorial Misconduct

Finally, Williams contends that the State, in closing argument, committed prosecutorial misconduct and deprived him of a fair trial. Specifically, he argues that the State's declaration that drugs are a serious problem was an attempt to persuade the jury to convict Williams for a reason other than guilt.

When reviewing a claim of prosecutorial misconduct that was properly raised before the trial court, we must determine "(1) whether misconduct occurred, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected otherwise." *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014) (citation and quotation marks omitted). Whether misconduct has occurred is decided by reference to case law and the Rules of Professional Conduct. *Id.* "The gravity of peril is measured by *the probable persuasive effect* of the misconduct *on the jury's decision* rather than the degree of impropriety of the conduct." *Id.* (emphasis in original) (citation omitted).

Williams's claim of prosecutorial misconduct stems from the following statements made by the prosecutor during closing argument:

> [State]: . . . When we talked about [sic] in jury selection someone said that there's a drug problem in Anderson. Yeah, there is.
> [Defense]: Judge, I'm going to object. Call to duty argument.

[Court]: Approach

[SIDEBAR]

[Court]: Objection overruled. Proceed.

[State]: Drugs are a big deal. They're a big deal. And when he throws around loosely the fact that, oh, his client may be an addict but he didn't . . . he didn't deal, he didn't deliver, again, I don't know how he says it with a straight face cause [sic] you saw it happen. He wants you to think that it's not a big deal, but it is. It is. So, please, when you retire back there, look to the Judge's instructions, follow the law that you've been given, apply the law to the facts, do your duty and find him guilty. Thank you.

Tr. at 393.

[22] As an initial matter, the State asserts that Williams failed to preserve his claim of prosecutorial misconduct. The State cites *Delarosa v. State*, which declares that "[t]o preserve a claim of prosecutorial misconduct, a defendant must object and request an admonishment. If the defendant is not satisfied with the admonishment, the defendant must move for a new trial." 938 N.E.2d 690, 696 (Ind. 2010); *accord Ryan*, 9 N.E.3d at 667. Because Williams did not seek an admonishment or a mistrial, the State believes Williams's claim is forfeited. We cannot agree. Williams *did object* to the prosecutor's statement during closing argument, and the trial court *overruled* that objection. It makes absolutely no sense for the State to say a defendant must request an admonishment and a mistrial after having been told by the trial court that no misconduct occurred. Statements in *Delarosa* and *Ryan* that requests for an admonishment and a mistrial are necessary to preserve a claim of prosecutorial misconduct *presuppose* that an objection is sustained and the trial court would actually have entertained a request for an admonishment. Put simply,

Williams's overruled objection is sufficient to preserve his prosecutorial misconduct claim.

[23] "It is misconduct for a prosecutor to request the jury to convict a defendant for any reason other than his guilt." *Coleman v. State*, 750 N.E.2d 370, 375 (Ind. 2001) (citation omitted). Williams contends that the prosecutor's comments in closing argument were an invitation for the jury to convict in order to combat the community's drug problem, rather than because Williams was guilty of the crime of dealing in cocaine. Indeed, an argument that "the jury owes it to the community" to find a defendant guilty amounts to prosecutorial misconduct. *See Woods v. State*, 547 N.E.2d 772, 781-82 (Ind. 1989), *cert. denied*, 501 U.S. 1259 (1991), *abrogated on other grounds by Richardson v. State*, 717 N.E.2d 32 (Ind. 1999).

[24] The State responds that the prosecutor's comments were in response to an implicit request by defense counsel for jury nullification. The State argues defense counsel's characterization of Williams as merely an "addict," tr. at 390, was an attempt to downplay his conduct and suggest that a small-time drug deal did not warrant punishment. In the State's view, the prosecutor's remark that "[d]rugs are a big deal" and "[defense counsel] throws around loosely the fact that, oh, his client may be an addict but he didn't . . . he didn't deal" was a reaction to argument by defense counsel. *Id.* at 393. "Prosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." *Ryan*, 9 N.E.3d at

669 (citation omitted). Under the circumstances of this case, we hold that the prosecutor's statements do not constitute reversible error.

# Conclusion

[25] We conclude the trial court did not abuse its discretion by denying Williams's motion for continuance, limiting cross-examination of Swaim, or allowing a witness to testify that he saw a drug transaction. Further, William's alleged prosecutorial misconduct claim does not constitute reversible error.

[26] Affirmed.

Bailey, J., and Brown, J., concur.