# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CARLOS HALE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A02-1202-CR-83 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-1104-FB-28571

**September 24, 2012**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

Here, a woman was robbed at gunpoint by two men right outside her apartment building. She identified the two men, including the defendant in this case, through what is known as a show-up identification. Specifically, the woman was transported by a police officer to where the suspects were located, and she was shown four suspects one at a time. Evidence of the show-up identification and the woman's in-court identification of the defendant were admitted at trial with no objection. On appeal, the defendant argues that the admission of the show-up identification was fundamental error and asks that we reverse his conviction.

Inasmuch as the show-up identification was not unduly suggestive, the trial court did not err by admitting it into evidence. Moreover, in light of the woman's in-court testimony identifying the defendant, no fundamental error could have occurred even if the admission of the show-up identification had been error. Accordingly, we decline the defendant's request to reverse his conviction.

Finally, we note that the fundamental error doctrine is being casually invoked whenever there is a failure to timely object at trial. This is not the purpose of the fundamental error doctrine, which is extremely narrow and reserved only for the most egregious circumstances.

Appellant-defendant Carlos Hale appeals his conviction for Robbery,[1] a class B felony. Specifically Hale argues that the victim's show-up identification of him was unduly suggestive, insofar as police officers displayed him in handcuffs. Furthermore,

---

[1] Ind. Code § 35-42-5-1.

Hale maintains that the introduction of this evidence was fundamental error. Concluding that Hale's failure to object to the introduction of this evidence results in waiver on appeal and that the admission of the show-up identification was not error, let alone fundamental error, we affirm the decision of the trial court.

## FACTS

On April 23, 2011, Berenice Martinez was tending bar at the Blue Iguana in Indianapolis, working the late shift. On April 24, when Martinez's shift ended at 3:00 a.m., she left the bar with $100 in cash plus her tips for the night that she kept in her purse. Martinez also had a $50 bill in her pants pocket. Martinez got into her vehicle to start her twenty-minute drive home to the Forest Hills Apartments.

When Martinez arrived at Forest Hills Apartments, she noticed a silver vehicle behind her. When she exited her vehicle to go into her apartment, Martinez made it as far as the sidewalk before a man put a gun to her head. Martinez was frightened and screamed. She pressed her telephone, but the two men took it from her. One of the men called her a "b*tch," but then told her she "smelled good" and "was pretty." Tr. p. 21.

Hale checked the inside of Martinez's purse and took the money out. The other man told Hale to recheck the purse. Hale took the $50 out of her pocket and checked her other pockets to see if she had any more. When Hale found money in her coat, Hale told the other man to check her purse again, and then he pushed her down. The other man threw all of the contents of the purse onto the ground.

3

When the two men found no more items of interest, they retreated to the silver vehicle that Martinez had seen earlier. Once the men were back at their vehicle, Martinez turned to look at them and then ran to knock on the door of her cousin's apartment. The police arrived within fifteen to twenty minutes.

Indianapolis Metropolitan Police Department (IMPD) Officers George June and Roger Taylor were involved in a nearby traffic investigation. Officer June responded to a dispatch of a robbery in progress at the 500 block of Forest Hills. This dispatch related that the suspects were last seen leaving the apartment complex in a silver vehicle. Officer June saw a vehicle fitting the description traveling at a high rate of speed. When Officer June caught up to the vehicle, he activated his lights and siren and could see that there were four people in the vehicle.

Officer Taylor saw the same vehicle exit Forest Hills at a high rate of speed and only lost sight of the vehicle for less than thirty seconds. When the vehicle came to a stop, Officer Taylor pulled up behind Officer June, and Officer June explained that the language barrier between Martinez and the officers slowed communications but that the officers "were steadily getting more and more description" as he and Officer Taylor were waiting for additional officers to arrive on the scene. Tr. p. 46. The description the officers were provided matched the persons in the back seat, namely, Hale and Martell Stott.

4

As he approached the vehicle, Officer June could see a handgun magazine sitting under the passenger side door on the ground. After the door was opened, Officer June could see a handgun under the seat on the passenger side.

Less than an hour after the silver vehicle was stopped, Detective Benjamin Bierce arrived with Martinez. The suspects had been separated immediately after being taken into custody, were handcuffed from behind, and were being kept in an area that was not visible to Detective Bierce or Martinez from Detective Bierce's vehicle.

Martinez was shown four suspects, each being brought around to Detective Beirce's vehicle. Martinez remained in the vehicle while she viewed the four men. Martinez identified both Stott and Hale as the men who had robbed her. A purple cell phone cover belonging to Martinez and $286 in cash were found on Hale during a search incident to his arrest.

On April 25, 2011, the State charged Hale with class B felony robbery. On December 19, 2011, Hale's jury trial commenced. In open court without objection, Martinez identified Hale as the man who had grabbed her purse. Additionally, through Detective Bierce's testimony, the State presented evidence that Martinez identified Hale and Stott during a show-up identification. After all the evidence had been presented, the jury found Hale guilty as charged.

On January 18, 2012, the trial court held a sentencing hearing. The trial court sentenced Hale to seven years, six years in the Department of Correction (DOC) and one year in community corrections. Hale now appeals.

5

Hale argues that Martinez's show-up identification of him was overly suggestive, inasmuch as he was in handcuffs. Hale further contends that even though he failed to object at trial, the admission of the show-up identification amounted to fundamental error and that without it, the evidence is insufficient to sustain his conviction for class B robbery.

The admission or exclusion of evidence falls within the sound discretion of the trial court, and its determination regarding the admissibility of evidence is reviewed on appeal only for an abuse of discretion. Wilson v. State, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Doolin v. State, 970 N.E.2d 785, 787 (Ind. Ct. App. 2012).

The Fourteenth Amendment's guarantee of due process of law requires the suppression of evidence when the procedure used during a pretrial identification is impermissibly suggestive. Harris v. State, 716 N.E.2d 406, 410 (Ind. 1999). Nevertheless, a contemporaneous objection is required to preserve an issue regardless of whether the defendant filed a pretrial motion to suppress. Jackson v. State, 735 N.E.2d 1146, 1152 (Ind. 2000). Failure to make such an objection waives any claim on appeal that the evidence was improperly admitted. Brown v. State, 783 N.E.2d 1121, 1126 (Ind. 2003). More particularly, "[t]o preserve an error for review on appeal, the specific objection relied upon on appeal must have been stated in the trial court as a basis for the

objection." Mitchell v. State, 690 N.E.2d 1200, 1205 (Ind. Ct. App. 1998). The purpose of this rule is to give the trial court the opportunity to evaluate the objection under the basis relied upon. Id. at 1206.

Here, Hale concedes that defense counsel did not oppose the admission of the show-up identification. Specifically, defense counsel neither filed a pretrial motion to suppress it nor did he timely object to its admission at trial. Appellant's Br. p. 10. Accordingly, the trial court was not afforded the opportunity to evaluate Hale's objection to this evidence, and he has waived this issue on appeal.

Notwithstanding the above, Hale attempts to avoid waiver by invoking the fundamental error doctrine. The fundamental error doctrine is extremely narrow. Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006). To be sure, it "applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." McQueen v. State, 862 N.E.2d 1237, 1241 (Ind. Ct. App. 2007).

While our Supreme Court has cautioned against one-on-one show-ups because of their inherent suggestiveness, there is no per se rule of exclusion. Mitchell, 690 N.E.2d at 1203. Rather, the admissibility of a show-up identification turns on an evaluation of the totality of the circumstances and whether they lead to the conclusion that the confrontation was conducted in a manner that could guide a witness into making a mistaken identification. Id.

Here, the crime scene was lighted with street lights, and Martinez testified that she could clearly see Hale's face because he was in front of her. Tr. p. 37. Furthermore, the show-up identification occurred soon after the robbery. See Mitchell, 690 N.E.2d at 1204 (listing several factors to consider when determining whether a show-up was permissible, including the witness's opportunity to view the criminal, the distance between the witness and criminal, the lighting conditions, and the length of time between the commission of the crime and the show-up). Accordingly, the trial court did not err by admitting evidence of the show-up identification.

Notwithstanding our conclusion, we are compelled to point out that defense counsel did not object to Martinez's in-court identification of Hale. Tr. p. 20-21. And it is well-settled that when a witness had an opportunity to observe the perpetrator during the crime, a basis for an in-court identification exists, independent of the propriety of pretrial identification. Brown v. State, 577 N.E.2d 221, 225 (Ind. 1991); Adkins v. State, 703 N.E.2d 182, 185 (Ind. Ct. App. 1998). Insofar as Martinez had an opportunity to clearly observe Hale, there was an independent basis for the in-court identification. Thus, even if the trial court had erred by admitting the evidence of the show-up identification, Hale's claim of fundamental error would have failed under these circumstances. See Hoglund v. State, 962 N.E.2d 1230, 1239-40 (Ind. 2012) (holding that fundamental error had not occurred when erroneously-admitted expert testimony was cumulative of other evidence properly before the jury).

8

Finally, in a related matter, we note that <u>Anders</u>[2] Briefs are not permissible in Indiana.  <u>See</u> <u>Mosley v. State</u>, 908 N.E.2d 599, 601-02 (Ind. 2009) (requiring that in any "direct criminal appeal as a matter of right, counsel must submit an advocative brief"). Nevertheless, this Court cannot ignore the alarming trend of questionable fundamental error claims.  For instance, it is not uncommon for a criminal defendant to argue on appeal that the introduction of evidence amounted to fundamental error whenever the defendant failed to object to its admission at trial.  <u>See</u> <u>Brown v. State</u>, 929 N.E.2d 204, 207-08 (Ind. 2010) (agreeing with the Court of Appeals that the defendant's failure to timely object to the admission of the evidence waived the error on appeal and did not amount to fundamental error); <u>Absher v. State</u>, 866 N.E.2d 350, 355 (Ind. Ct. App. 2007) (concluding that the failure to object to the State's substantive amendment to the charging information resulted in waiver and that "[s]imply asserting the legal conclusions that his trial was unfair and that he received ineffective assistance of counsel, without any cogent argument or citation to authority, is not enough to prove fundamental error").

Again, the fundamental error doctrine is an "extremely narrow" doctrine that is available only in "egregious circumstances."  <u>Brown</u>, 929 N.E.2d at 207.  This rationally follows from the purpose of requiring a contemporaneous objection in the first place, which is to give the trial court the opportunity to correct any errors before they become fundamental error.

---

[2] <u>Anders v. California</u>, 386 U.S. 738 (1967).

The judgment of the trial court is affirmed.

ROBB, C.J., and BRADFORD, J., concur.